# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABIRA MEDICAL LABORATORIES LLC D/B/A GENESIS DIAGNOSTICS,<br><br>*Plaintiff*,<br><br>*v.*<br><br>UPMC HEALTH PLAN INC. and UNIVERSITY OF PITTSBURGH MEDICAL CENTER,<br><br>*Defendants*. | No. 2:24-cv-00227-CFK |

## DEFENDANTS' OMNIBUS MOTION TO COMPEL COMPLETE DISCOVERY RESPONSES AND DEPOSITION APPEARANCES

Defendants UPMC Health Plan Inc. and University of Pittsburgh Medical Center (collectively, "UPMC") move the Court for an order pursuant to Federal Rule of Civil Procedure 37 compelling Plaintiff Abira Medical Laboratories LLC d/b/a Genesis Diagnostics ("Plaintiff") to produce complete, supplemental responses to UPMC's Interrogatories, Requests for Production of Documents (Set 1), and Requests for Production of Documents (Set 2) in conformity with the Federal Rules of Civil Procedure no later than April 15, 2025, and further, that Plaintiff be compelled to produce a 30(b)(6) witness, Alan Miller, Abraham Miller, and Gabriela Lavin-Mongillo for deposition on the following dates, respectively, April 23, 2025, April 25, 2025, April 29, 2025, and April 30, 2025 and produce to

UPMC contact information for Alan Ace, who Plaintiff previously represented was a witness under Plaintiff's control.  A proposed form of order is attached hereto.

In summary, with respect to Plaintiff's written discovery responses, they include improper general objections, specific objections that have no application, and generic references to Plaintiff's entire document production.  Even a cursory review of those responses show they completely fail to comply with the Court's Procedures and the Rules of Civil Procedure.  Those responses reflect both a lack of good faith effort in a lawsuit Plaintiff filed and a copy-and-paste approach to Plaintiff's discovery obligations.

As for depositions of Plaintiff's witnesses, Plaintiff has failed to cooperate in the scheduling of any of Plaintiff's witnesses.  Most egregiously, two of Plaintiff's key witnesses have apparently absented themselves from the country until the end of the discovery period, despite the Court's entry of a scheduling order in December notifying them of when they should expect to be deposed and UPMC's multiple notifications, including formal deposition notices, for their depositions to occur during the discovery period.  Plaintiff waited weeks after these notices to admit to UPMC that these two witnesses apparently have absconded.

UPMC has repeatedly attempted to resolve Plaintiff's many discovery failures without Court involvement, but Plaintiff has failed to cooperate, and

recently Plaintiff has stopped responding to UPMC entirely. Plaintiff filed this lawsuit and thus should have been prepared to undertake discovery efforts in compliance with the Court's procedures and the Rules, but it is failing to live up to those obligations. UPMC thus is left no choice but to seek the Court's assistance to force Plaintiff to comply with its discovery obligations.

UPMC brings this discovery dispute to the Court's attention as per this Court's Policies and Procedures for Counsel through filing this simple motion, without a brief, and in support thereof states:

I. **Motion to Compel Complete Discovery Responses and Document Production**

   a. **Plaintiff serves untimely discovery responses.**

   1. Genesis filed this lawsuit in January 2024, seeking payment for alleged laboratory services it claims to have performed for UPMC Health Plan enrollees dating to 2016. (Doc. 20)

   2. UPMC denies Genesis' claims and asserted a counterclaim. (Doc. 27)

   3. UPMC asserts that Genesis' claims raised red flags, triggering an audit.

   4. The audit revealed that Genesis received improper payments. UPMC demanded repayment of $146,229.20, but Genesis failed to repay.

5. On December 19, 2024, the Court issued a scheduling order specifying a discovery period of February 3 to May 5, 2025. (Doc. 36)

6. Plaintiff thus was on notice that it should be fully prepared to pursue and respond to discovery during this period.

7. On February 5, 2025, UPMC served Plaintiff with interrogatories and requests for production of documents, set 1. (***Exhibits A and B***.)

8. On February 13, 2025, UPMC served Plaintiff with a second set of requests for production of documents. (***Exhibit C***.)

9. Plaintiff's deadline to answer UPMC's interrogatories and to produce documents responsive to UPMC's document requests (Set 1) was March 7, 2025.

10. Plaintiff did not meet this deadline and on March 10, 2025, UPMC emailed Plaintiff and asked that responses be received by March 14, 2025. (***Exhibit D***.)

11. Plaintiff failed to respond by March 14 and UPMC emailed Plaintiff that day, again, requesting Plaintiff's discovery responses and document production. (***Exhibit E***.)

12. On March 17, 2025, UPMC reminded Plaintiff that its discovery responses were overdue. (***Exhibit F***.)

13. Later that day, Plaintiff served untimely and deficient responses to UPMC's interrogatories and to UPMC's document requests (Set 1) and deficient responses to UPMC's document requests (Set 2) (collectively, "Plaintiff's Discovery Responses"). (***Exhibits G to I***.)

14. These issues are detailed below.

b. **Plaintiff waived the right to assert objections in response to UPMC's interrogatories and document requests (Set 1).**

15. Plaintiff waived the right to assert any objection in response to UPMC's interrogatories and requests for production of documents (Set 1).

16. Federal Rule of Civil Procedure 33 requires responding parties to serve objections, if any, within 30 days after being served with the interrogatories. *See* Fed.R.Civ.P. 33(b)(2),(4).

17. Rule 34 contains a similar limitation. *See* Fed.R.Civ.P. 34(b)(2).

18. Plaintiff did not respond or assert any objections to UPMC's interrogatories or requests for production of documents (Set 1), on or before March 7, 2025, and thus, waived the right to assert any objection(s). *See* Fed.R.Civ.P. 33(b)(2),(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *see also Daumer v. Allstate Insurance Company*, 1992 WL 277650, at *1 (U.S. Dist. Ct. E.D.P.A. Oct. 1, 1992) (observing that Rule 34(b) requires a party to respond to document requests within

30 days and that untimely "objections constitute[] a waiver of any objections [the party] may have had.").

### c. **Global deficiencies contained within Plaintiff's Discovery Responses.**

19. On March 18, 2025, UPMC sent Plaintiff notice by email that UPMC would soon send Plaintiff correspondence explaining why Plaintiff's Discovery Responses were deficient. (***Exhibit J***.)

20. On March 20, 2025, UPMC sent Plaintiff the deficiency letter. (***Exhibit K***.)

21. As detailed in that letter, Plaintiff's Discovery Responses contain three global deficiencies.

22. First, Plaintiff's Discovery Responses are prefaced by "General Objections." This Court and the District Judge assigned to this case prohibit this practice and accordingly, Plaintiff had to withdraw all its "General Objections." *See* Judge Kenney's Policies and Procedures at p. 15 (stating, "General objections are not acceptable.").

23. Second, with respect to Plaintiff's General Objections and individual objections, they violate Fed.R.Civ.P. 34(b)(2) because Plaintiff failed to state whether it was withholding any information or documents because of the lodged

objection(s). *See id*. (mandating, a responding party to "state whether any responsive materials are being withheld on the basis of" the objection(s).).

24. Third, in response to many interrogatories and many document requests, Plaintiff improperly refers UPMC to Plaintiff's <u>entire</u> document production that comprises 8,314 pages. *See **Exhibit G*** at Nos. 2, 3, 6, 7, 12-18 and ***Exhibit H*** at Nos. 1-19, 21, 24, 27-42.

25. Plaintiff's Discovery Responses are deficient because Plaintiff fails to guide or direct UPMC to the location of any information contained within Plaintiff's document production that is potentially responsive to UPMC's discovery requests.

26. Plaintiff instead has made a "document dump" that does not comply with the Federal Rules of Civil Procedure and suggests a lack of good faith effort by the party that filed this lawsuit.

    **d.** **Deficiencies pertaining to Plaintiff's individual Discovery Responses.**

27. Plaintiff's individual interrogatory responses are deficient for multiple other reasons, too.

28. In many instances, Plaintiff improperly asserted boilerplate, unexplained objections that have no basis.

29. For example, Interrogatory No. 2 requested Plaintiff to identify natural persons that have knowledge of any facts alleged in Plaintiff's Amended Complaint. *See **Exhibit G*** at No. 2.

30. In response, Plaintiff objected, including by asserting the attorney-client privilege and work-product doctrine. *See id*.

31. That privilege and doctrine are not applicable to a discovery request calling for the identification of a natural person.

32. Put another way, the identity of a human is not itself privileged.

33. Plaintiff repeated these improper objections in response to Interrogatories 1-5, 8, 10, and 12-18. *See id*. at Nos. 1-5, 8, 10, and 12-18.

34. Plaintiff also asserted the attorney-client privilege and work-product doctrine in response to Interrogatories Nos. 6 and 7 (asking Plaintiff to detail its internal policies and procedures regarding the steps it follows to collect funds incurred for services it renders). *See id*. at Nos. 6, 7.

35. Plaintiff's policies and procedures, if any, are not protected by the attorney-client privilege or the work-product doctrine.

36. Plaintiff also objected to various questions asserting that the interrogatory "was asked and answered in Plaintiff's initial disclosures." *See id*. at Nos. 2, 4, and 8.

37. But Plaintiff <u>did not serve any initial disclosures</u> in this matter and thus has no basis whatsoever to assert the foregoing objection.

38. This objection similarly shows a lack of good faith effort and instead indicates Plaintiff's discovery responses were prepared in copy-and-paste fashion.

39. Interrogatory No. 4 requires Plaintiff, a limited liability company, to identify natural persons that have knowledge of the allegedly unpaid balances for which Plaintiff demands payment. *See id*. at No. 4.

40. Plaintiff objected to this question, in part, because, according to it "[t]his interrogatory ignores the fact that Plaintiff is a limited liability company and brings forth the Amended Complaint." *See id*.

41. Plaintiff's objection is nonsensical because Plaintiff's LLC status is irrelevant for what is being asked.

42. Further, in multiple instances, Plaintiff asserted "form objections." *See id*. at Nos. 2, 4, 5, 8-11, and 14.

43. UPMC has no understanding as to what constitutes a "form objection," a term Plaintiff does not explain or define.

44. Plaintiff also asserted some iteration of objections premised on the discovery request as being "overly broad," "unduly burdensome," "ambiguous," and/or "repetitive." *See id*. at Nos. 2-18.

45. None of the subject discovery requests have these claimed issues because UPMC crafted its requests to be as clear and targeted as possible.

46. Plaintiff's document request responses are similarly deficient.

47. In each of Plaintiff's responses to UPMCs requests for production of documents (Sets 1 and 2), Plaintiff asserted some iteration of objections premised on the discovery request as being "overly broad," "unduly burdensome," "ambiguous," "repetitive" and/or "call[ing] for factual and legal conclusions." *See generally* **Exhibits H and I**.

48. Plaintiff did not, however, provide any justification for these claimed objections.

49. All the objections described above should be stricken and Plaintiff should be compelled to supply complete, supplemental responses to UPMC's discovery requests (interrogatories and requests for production of documents, Sets 1 and 2) that comply with the Federal Rules of Civil Procedure.

50. In its letter, UPMC requested Plaintiff to cure the foregoing deficiencies by March 30, 2025.

51. Plaintiff failed to take any remedial measures during that time.

52. UPMC in fact never received a response to its letter.

53. On March 31, 2025, via email, UPMC followed up on its letter and requested that Plaintiff address the foregoing deficiencies. (***Exhibit L***.)

54. Plaintiff did not respond.

55. On April 1, 2025, via email, UPMC tried again, this time requesting that Plaintiff participate in a meet-and-confer to address, *inter alia*, the foregoing deficiencies. (***Exhibit M***.)

56. Plaintiff once again did not respond.

57. As of this filing, UPMC has not heard from Plaintiff for nearly two weeks, despite these repeated attempts to resolve these deficiencies and the coming May 5, 2025 discovery deadline.

58. UPMC thus is left no choice but to seek relief from the Court.

II. **Motion to Compel Depositions**

59. On January 24, 2025, UPMC advised Plaintiff that it intended to schedule Plaintiff's corporate designee and individual fact witnesses for dates in March and requested that Plaintiff's witnesses keep their calendars as clear as possible in March and April to ensure that depositions could be scheduled. (***Exhibit N***.)[1]

---

[1] Exhibit N is in redacted form because it contains confidential information not relevant to the instant matter.

60. February 24, 2025, UPMC noticed the following depositions: Plaintiff's 30(b)(6) corporate designee(s) for March 31, 2025; Alan Miller for April 1, 2025; Abraham Miller for April 2, 2025; Elliot Vernon for April 3, 2025; Alan Ace for April 4, 2025; Julia Hogan for April 7, 2025; Gabriela Laven for April 7, 2025; and Raven Stone for April 8, 2025.

61. UPMC issued these notices based on information gathered during its investigation of Plaintiff's claims and review of, *inter alia*, certain publicly available information, including the Centers for Medicare & Medicaid Service's revocation notice issued to Plaintiff.

62. More than a week later, on March 4, 2025, Plaintiff objected to the depositions of Julia Hogan, Gabriela Laven and Raven Stone, essentially claiming that these individuals have no relevant information pertaining the claims or if they do, the information would be repetitive of others. (**Exhibit O**.)

63. Plaintiff also said it lacked the power to produce Mr. Vernon for deposition since Plaintiff purportedly does not employ him.

64. Plaintiff also requested that Mr. Ace's deposition be conducted via video conference.

65. Notably, Plaintiff did not object to producing the 30(b)(6) witness, Alan Miller, Abraham Miller, or Alan Ace on the noticed dates.

66. On March 10, 2025, UPMC requested Plaintiff provide it with Mr. Vernon's contact information and on March 11, 2025, Plaintiff complied, without objection.

67. But more than three weeks later, on March 19, 2025, Plaintiff notified UPMC for the very first time that Abraham and Alan Miller were unavailable to appear for deposition on the noticed dates (April 1 and 2) because they will purportedly be out of the country until May 5, 2025, which happens to be the last day of discovery. (***Exhibit P***.)

68. Plaintiff has never provided proof or explanation justifying the Millers' absence during the entire period when they should have fully expected to be deposed, and they actually were noticed to be deposed.

69. In that same correspondence, Plaintiff requested that Mr. Ace be deposed after the Miller depositions.

70. UPMC immediately requested a meet-and-confer with Plaintiff to address, *inter alia*, deposition scheduling and requested that Plaintiff be prepared to give UPMC potential dates for the depositions of the Millers, Mr. Ace and a 30(b)(6) witness.

71. Plaintiff sent UPMC a follow up communication at 5:44 PM that day informing UPMC that the Millers depositions and a corporate designee(es)

deposition(s) could not occur before May 5, 2025—the last day of the discovery period. (***Exhibit Q***.)

72. Plaintiff was also non-committal to scheduling Mr. Ace's deposition.

73. On March 20, 2025, UPMC and Plaintiff participated in a meet-and-confer.

74. Deposition scheduling was discussed at length, but Plaintiff failed to offer any dates for the Millers or any other witness.

75. Yet UPMC still agreed to take the Miller depositions and Mr. Ace's deposition virtually, to accommodate the Millers' purported absence from the country, and offered to take the depositions on April 3, 4, 7, 8, 9, 10, and 11.

76. Plaintiff agreed to forward these dates to the Millers and Mr. Ace.

77. UPMC also agreed to withdraw Ms. Stone's and Ms. Hogan's deposition notices.

78. UPMC agreed to consider withdrawing Ms. Lavin-Mongillo's deposition notice if Plaintiff supplied additional information (such as a resume, affidavit or other material) showing the nature of role within Plaintiff's organization.

79. To date, Plaintiff has failed to do so.

80. UPMC confirmed that it will produce its 30(b)(6) witness(es) for deposition on April 22, 2025, if necessary, and two other witnesses on May 1 and May 2.

81. UPMC memorialized all the foregoing agreement by letter dated March 20, 2025. (***Exhibit R***.)

82. Days passed, but Plaintiff still did not confirm the Millers' or Mr. Ace's availability and did not provide any additional information regarding Ms. Lavin-Mongillo.

83. On March 24, 2025, UPMC emailed Plaintiff and requested it to confirm the deposition appearances for Plaintiff's 30(b)(6) witness, the Millers, Mr. Ace, and Ms. Lavin-Mongillo. (***Exhibit S***.)

84. Plaintiff finally responded later that day and backtracked from what was discussed during the meet-and-confer, indicating that it refused to produce the Millers for deposition (either in person <u>or</u> virtually) before May 5, 2025, again claiming they would be out of the country without providing any proof of this or explaining how their absence from the country could be justifiable, given the Court's December scheduling order. (***Exhibit T***.)

85. Plaintiff also offered no justification as to why the depositions could not be taken by video conference, which would solve the issue created by the Millers' alleged absence from the country.

86. Plaintiff also claimed, for the first time, that it could not produce Mr. Ace for deposition because he is purportedly the operations manager for Genesis Healthcare Pvt. Ltd.

87. Plaintiff thus repeatedly misled UPMC that it would produce Mr. Ace for deposition.

88. UPMC responded that day, requesting Plaintiff to justify its position concerning the Miller depositions and expressing surprise about Plaintiff's change in position as for Mr. Ace and requesting his contact information. (***Exhibit U***.)

89. Plaintiff did not respond to these inquires.

90. On March 31, 2025, UPMC sent Plaintiff a follow up request regarding, *inter alia*, scheduling the Millers' depositions, requesting Mr. Ace's contact information, and additional information to support Plaintiff's contention that Ms. Lavin-Mongillo does not possess information relevant to Plaintiff's claims. (***Exhibit L***.)

91. On April 1, 2025, UPMC requested a meet-and-confer with Plaintiff to discuss multiple outstanding discovery issues. (***Exhibit M***.)

92. As of this filing, Plaintiff has not responded.

93. As of this filing, UPMC has not heard from Plaintiff for nearly two weeks, despite these repeated attempts to resolve these deficiencies and the coming May 5, 2025 discovery deadline.

94. UPMC thus is left no choice but to seek relief from the Court.

Respectfully submitted,

*/s/ Matthew C. Brunelli*
Karl S. Myers (Pa. No. 90307)
Matthew C. Brunelli (Pa. No. 93498)
STEVENS & LEE
1500 Market Street
East Tower, 18th Floor
Philadelphia, PA 19102
(215) 751-2864
karl.myers@stevenslee.com
(215) 751-1955
matthew.brunelli@stevenslee.com

Counsel for Defendants,
UPMC Health Plan Inc. and
University Of Pittsburgh Medical Center

Date: April 4, 2025